## IN THE CIRCUIT COURT FOR
## BALTIMORE COUNTY, MARYLAND

| | |
|---|---|
| YURY SHADRIN, individually and on behalf of all others similarly situated<br>2617 Meadowland Court,<br>Parkville, MD 21234 | Case No.: |
| Plaintiff, | |
| v. | |
| HUNTER WARFIELD, INC.<br>c/o RAY SHERBILL OR DAVID KAY<br>7600 Wisconsin Ave., Ste 700,<br>Bethesda, MD 20814<br>Serve On Resident Agent:<br>  CSC-Lawyers Incorporating Service<br>  Company<br>  7 St Paul St, Ste 820,<br>  Baltimore, MD 21202 | |
| CONTINENTAL REALTY CORPORATION<br>1427 Clarkview Rd, Ste 500<br>Baltimore, MD 21209<br>Serve On Resident Agent:<br>  CR Resident Agent, LLC,<br>  1427 Clarkview Road, Ste 500<br>  Baltimore, MD 21209 | |
| DONCASTER VILLAGE APARTMENTS, LLC<br>1427 Clarkview Rd, Ste 500<br>Baltimore, MD 21209<br>Serve On Resident Agent:<br>  CR Resident Agent, LLC,<br>  1427 Clarkview Road, Ste 500<br>  Baltimore, MD 21209 | |
| Defendants. | **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

YURY SHADRIN, through Plaintiff's undersigned attorneys, files this lawsuit on behalf of a class of similarly situated consumers and for cause states:

PARTIES

1. Plaintiff is a resident of Baltimore County, Maryland.

2. Defendant Hunter-Warfield, Inc. ("HWI") is a Maryland corporation with its principal office at 7600 Wisconsin Ave, Ste 700, Bethesda, MD 20814. Its resident agent is CSC Lawyers Incorporating Service Company, 7 St. Paul Street, Ste 820, Baltimore, MD 21202.

3. Defendant HWI is a licensed collection agency in Maryland.

4. Defendant Continental Realty Corporation ("CRC") is a Maryland corporation with its principal place of business at 1427 Clarkview Rd, Ste 500, Baltimore, MD 21209. Its resident agent is CR Resident Agent, LLC, at the same address.

5. Defendant Doncaster Village Apartments, LLC ("DVA") is a Maryland limited liability company with the same principal office and resident agent as CRC.

6. On information and belief, CRC is in common ownership with, or has an ownership interest in, DVA.

7. On information and belief, CRC conducts substantially all of DVA's business.

**JURISDICTION**

8. This court has jurisdiction pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-101 because Defendants are incorporated in Maryland.

9. Venue is proper in this county pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-201(a), because Defendants regularly carry-on business in this county.

**FACTS**

10. Mr. Shadrin rented an apartment at 2 Tadmore Court, #101, Parkville, MD 21234 ("the Apartment") from CRC on March 18, 2020, at $1,235.00 per month for 4 months, paying a security deposit of $350.00 ("the Lease").

11. The Lease contained an addendum titled "AUTOMATIC RENEWAL OF LEASE" which stated in substance:

> The tenancy created under the Lease (including any renewal or extension of this tenancy) shall continue from month to month after its expiration, subject to the same covenants, agreements, rules and regulations as are set forth in the Lease, unless management mails to Resident or Resident mails to Management written notice (sent in accordance with Section No. 18 of the Lease Agreement), at least two (2) months prior to the expiration date of the then existing term, of said Management's or Resident's intention not to renew the Lease. ***If Management mails a notice to the Resident of its intention to terminate the then existing Lease term, and in said notice offers the Resident a new Lease term pursuant to the terms and conditions therein contained, and if the Resident does not otherwise notify Management (in accordance with section 18 of the Lease Agreement within 15 days of the mailing of the Management's notice of the Resident's intent not to renew the Lease, the Resident shall be considered as Resident under the terms and conditions specified in Management's notice.***

(emphasis added).

12. The Clause thus provides for two distinct provisions: (1) a standard automatic renewal provision ("Renewal Provision") whereby the lease is automatically renewed *on the same terms as before*, and (2) a provision allowing the landlord to give notice to terminate the current lease and offer a new lease on different terms *and have the tenant accept that new lease by mere silence* (referred to hereafter as the "New Terms Provision").

13. Maryland law conditions the enforceability of automatic renewal clauses in

3

residential lease agreements on special formalities. An automatic renewal clause must be set apart from all other terms of the lease and be accompanied by the tenant's signature or initials. Md. Code Ann., Real Prop. § 8-208(e).

14. An automatic renewal clause is "a provision calling for an automatic renewal of the lease term unless prior notice is given by the party or parties seeking to terminate." Md. Code Ann., Real Prop. § 8-208(e)(1).

15. The New Terms Provision was included what would otherwise be a stand-alone automatic renewal clause.

16. The New Terms Provision is not a part of an automatic renewal clause because it deals with notice to "terminate the then existing lease term" and to offer new lease terms that would purport to be accepted by silence.  In contrast, an automatic renewal clause must be set apart from other provisions.

17. The attempt to include the New Terms Provision with the purported automatic renewal clause violated Md. Code Ann., Real Prop. § 8-208(e)(1) because it meant that the automatic renewal clause was no longer set apart from all other lease terms.

18. The New Terms Provision is itself repugnant because (1) it is contrary to the common law rule that contractual offers cannot be accepted by silence; (2) it would allow the landlord to lease residential property without a written lease, in violation of Md. Code Ann., Real Prop. § 8-208(a); or (3) it would allow the landlord to omit the items required in a written lease, in violation of Md. Code Ann., Real Prop. § 8-208(c).

19. Mr. Shadrin told CRC at the time he rented the apartment that he would not be renewing at the end of the term.

20. Nevertheless, on April 2, 2020, CRC sent Mr. Shadrin a letter offering different lease terms for renewal. It stated that "It has been a pleasure to have you call our community your home and we hope you choose to continue to stay with us. As your current lease term will end on 7/19/2020 we would like to offer you a new lease that best suits your needs." The letter then gave various lengths of lease against their monthly rent, ending with $1,500.00 for a month-to-month lease.

21. The letter continued "to take advantage of these rates you will need to select a new term" and reminded the tenant that:

> Notice of renewal or intent to vacate will need to be completed by 5/20/2020, which is sixty (60) days prior to your lease expiration. ***Please note that upon expiration of your current lease, if your lease renewal has not been executed, your lease will automatically renew on a month-to-month basis at the monthly rental rate of $1,500.00***

(Emphasis added).

22. The letter was not a notice of intent to terminate by the landlord, because it did not say that the lease would terminate. Rather it offered some alternate terms for renewal and pointed to the default position under the Automatic Renewal Clause: the tenant's notice to terminate was required 60 days before the lease end date.

23. CRC did not give Mr. Shadrin the required 60 days' notice of its intent to terminate the lease.

24. Even if the letter was intended as a notice of intent to terminate the lease at the end of the term, it gave an inaccurate date for the date by which Mr. Shadrin would have to give notice of intent not to renew. Under the Clause, a notice of intent to terminate by the landlord, coupled with an offer of new terms, triggered a 15-day period for the tenant to give notice that he did not wish to continue with the lease

under the new terms. That period would have ended not on May 20 as the letter said, but on April 17, 2020, more than a month earlier.

25. In the circumstances, the previous dealings of the parties did not make it reasonable for Mr. Shadrin to notify CRC within 15 days of its letter offering a new lease, first because he had told CRC at the outset that he was not going to renew and second because there were no previous dealings: Mr. Shadrin had never leased from CRC before, never renewed or entered into a new lease on modified terms before, and never had any intention of so doing.

26. On June 9, 2020, CRC sent an email to Mr. Shadrin claiming that "[y]ou've passed your deadline and your lease will automatically renew at a month-to-month rate of $1,500 if your lease agreement isn't signed by the end of TODAY."

27. On June 18, 2020, Mr. Shadrin gave written notice that he intended to move out on July 19, 2020, at the end of the lease.

28. CRC responded with a letter falsely claiming "receipt of your intention to vacate your apartment on August 19, 2020." CRC stated it was "aware that your email stated you plan on moving out on July 19, 2020, but sufficient notice was not given. Therefore your lease has automatically renewed at a month to month rate and you'll be financial responsible for the apartment up until 8/19/2020."

29. Mr. Shadrin disputed the legitimacy of the automatic renewal and rent increase, and complained about CRC's behavior to the Consumer Protection Division of the Office of the Attorney General.

30. Mr. Shadrin therefore refused to pay the additional money CRC claimed that he owed.

31. On information and belief, CRC then placed Mr. Shadrin's alleged debt with HWI

for collection.

32. HWI wrote to Mr. Shadrin on February 10, 2022, seeking to collect an alleged debt owed to "Doncaster Village-515" ("The Letter"), consisting of $1,193.46 in principal and $114.83 in interest.

33. The Letter sought interest on the alleged debt at 8%.

34. The legal rate of interest in Maryland is 6%. Md. Const. Art. 3, § 57.

35. There is no statute permitting a rate of interest other than 6% for landlord tenant debts. Even if a residential rental debt is reduced to judgment, it still bears interest at only 6%. Md. Code Ann., Cts. & Jud. Proc. § 11-107(b).

36. The Lease provided for interest "at the highest rate allowed by law."

37. HWI, CRC and DVA had no right to seek interest higher than 6%.

38. On information and belief, The Letter is a standard form letter sent to many other consumers concerning residential rental debts in Maryland.

39. Mr. Shadrin was damaged by HWI, CRC and DVA's actions in that he was denied truthful information about his debt, collected upon and accused of owing an amount in excess of the amount owed as a matter of law, because of the improper new lease term and the excessive interest and.

## HUNTER WARFIELD'S HISTORY OF COMPLAINTS

40. HWI is frequently the subject of complaints by consumers, including for attempting to collect money that is not owed.

41. Complaints against HWI to the Better Business Bureau include:

   a. On October 4, and 12, 2022, that HWI sought to collect interest that was not

being sought by its landlord-client.[1]

b. On September 20, 2022, that HWI attempted to collect an inflated bill for carpeting and added interest to it.[2]

c. On August 11, 2022, that HWI attempted to collect a debt for an address where the consumer had never lived.[3]

d. On May 29, 2022, that HWI demanded $2,706, one week after a court had entered judgment on the same debt for only $1,353.[4]

e. On August 30, 2021, that HWI demanded payment of money including attorneys fees that had already been paid.[5]

f. On April 25, 2020, that HWI attempted to collect a debt allegedly owed by a US Army veteran in relation to his breaking a lease when ordered to active duty in Afghanistan and adding interest to the debt unlawfully.

42. HWI knows that it must have a basis in law to charge interest. For example, in response to a Better Business Bureau complaint on March 21, 2022, HWI argued that the lease provided for 12% per annum interest.[6]

**PROPOSED CLASS DEFINITIONS**

43. Plaintiffs proposed the following class definition for the "Letter Class":

All individuals to whom HWI sent a letter seeking interest in excess of 6% per annum simple interest on a residential rental-related debt arising from a lease of property in

---

[1] https://www.bbb.org/us/fl/tampa/profile/collections-agencies/hunter-warfield-inc-0653-90015950/complaints?page=1

[2] *Id.*

[3] https://www.bbb.org/us/fl/tampa/profile/collections-agencies/hunter-warfield-inc-0653-90015950/complaints?page=2

[4] https://www.bbb.org/us/fl/tampa/profile/collections-agencies/hunter-warfield-inc-0653-90015950/complaints?page=6

[5] https://www.bbb.org/us/fl/tampa/profile/collections-agencies/hunter-warfield-inc-0653-90015950/complaints?page=15

[6] https://www.bbb.org/us/fl/tampa/profile/collections-agencies/hunter-warfield-inc-0653-90015950/complaints?page=9

Maryland.

44. Plaintiffs proposed the following class definition for the "Renewal Class":

> All individuals who executed a residential lease with CRC or DVA, to whom CRC or DVA charged an increased amount of rent following automatic renewal to which the tenant did not affirmatively agree.

45. The time period for the Letter Class is class is limited to the one year immediately preceding the filing of this complaint and the time limit for the Renewal Class is limited to the three years immediately preceding the filing of the complaint, to the present.

46. The following people are excluded from the classes:

   a. employees or independent contractors of the Defendant;

   b. relatives of employees and independent contractors of the Defendant;

   c. employees of the Court where this action is pending.

   d. Persons who have filed a personal bankruptcy and received a discharge since the last event causing the person to be a member of the class.

## CLASS ALLEGATIONS

47. This action is brought as a Class Action.

48. Plaintiff proposes to act as the representative of the proposed classes defined above.

49. *Ascertainability*. The Class Members are readily identifiable from the information and records in the possession or control Defendants or their affiliated entities and agents.

50. The only individual questions concern the identification of Class Members and the

damages they sustained. This information can be determined from the Defendant's business records or other sources, which are admissible as an exception to the hearsay rule and as a statement by a party.

51. *Numerosity*. Rule 2-231(b)(1). Upon information and belief, the Interest Class is sufficiently numerous that individual joinder of all members is impractical. This is based upon the fact that more than 1380 complaints have been logged against HWI and its holding company, HW Holdings, Inc., on the Consumer Financial Protection Bureau complaints database, of which at least 58 were complaints by Maryland residents. HWI is thus clearly an active debt collector in Maryland.

52. Upon information and belief, the Renewal Class is also sufficiently numerous. CRC and DVA use the New Terms language in their standard form lease. CRC manages fifteen apartment complexes in Maryland, including Doncaster Village Apartments. Doncaster Village is itself a fourteen-acre site with more than a dozen apartment buildings.

53. *Commonality*. Rule 2-231(b)(2). There are questions of law and fact common to the Class which predominate over any questions affecting only the individual members of the Class and, in fact, the wrongs alleged against the Defendants are identical for each member since the statements made by are judged by the same objective standard of the least sophisticated consumer.

54. The common issues for the Letter Class include, but are not limited to:

   I.    Whether HWI as entitled to collect more than 6% interest on residential rental-related debts.

  II.    Whether HWI violated the Fair Debt Collection Practices Act.

 III.    The amount, if any that HWI should have to pay in statutory damages under

the Fair Debt Collection Practices Act.

55. The common issues for the Renewal Class include, but are not limited to:

I.     Whether the automatic renewal clause is valid.

II.    Whether silent acceptance of the terms of the new lease is legally permissible.

III.   Whether inclusion of, or reliance upon, the automatic renewal clause violated the Maryland Consumer Protection Act.

IV.    Whether the inclusion of, or reliance upon, the automatic renewal clause violated the Real Property Article.

56.    *Typicality*. Rule 2-231(b)(3).  Plaintiff's legal and equitable claims are typical and the same or identical for each Class Member they represent and will be based on the same legal and factual theories.  Defendants' defenses would be typical and the same or identical for each Class Member and will be based on the same legal and factual theories.

57. *Adequacy*. Rule 2-231(b)(4). The named Plaintiff will fairly and adequate represent and protect the interests of the Class. The named Plaintiff has retained counsel who are experienced in consumer litigation and who have been appointed as class counsel in several class actions asserting claims under consumer protection laws.

58. The named Plaintiff does not have any interests antagonistic to that of the Class.

59. *Superiority*. A Class Action is superior to other methods for adjudication of the class members' claims. If each case were litigated separately, each class members' individual claims would likely be limited to statutory damages which may be difficult to efficiently pursue on an individual basis. The Letter Class members are likely to be in financial difficulty – since they are the targets of debt collection

activity. Their lack of financial resources will also make individual cases disadvantageous. It will also further the enforcement of remedial consumer protection laws.

60. Concentration of the Class claims in this forum is advantageous since the Defendants' home state is Maryland, and most class members are likely to live in Maryland. Finally, difficulties in managing the class are unlikely: the core factual and legal issues are identical across the class.

## COUNT I – FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692a et seq. (HWI Only)(Class)

61. Plaintiff incorporates the allegations in the foregoing paragraphs.

62. At all material times herein, Plaintiff's debt was a consumer debt as defined by the FDCPA, 15 U.S.C.A. § 1692a(5) because it was an "alleged obligation . . . to pay money arising out of a transaction . . . primarily for personal, family or household purposes" namely, the renting of an apartment.

63. At all material times herein, Plaintiff was a "consumer" as defined by the FDCPA, 15 U.S.C.A. § 1692a(3).

64. At all material times herein, Defendant HWI was a "debt collector" as defined by the 15 U.S.C.A. § 1692a(6), because it "regularly . . . attempts to collect, directly or indirectly, debts . . . asserted to be owed or due another."

65. Defendant HWI violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount or legal status of the allege debt.

66. Defendant HWI violated 15 U.S.C. § 1692e(10) by using a false representation or deceptive means to attempt to collect a debt or obtain information concerning a consumer.

67. Defendant HWI violated 15 U.S.C. § 1692f(1) by collecting amounts not authorized by the underlying contract.

68. Defendant HWI's false representations were material because they were of a type that would be important to a consumer in deciding how to respond to Defendant's collection efforts. Knowing the true amount of the debt owed is material because it is likely to influence the amount that the consumer is willing to pay to the debt collector.

69. Plaintiff was damaged by Defendant HWI's actions in that he was deprived of truthful information required to be given about the alleged debt.

**WHEREFORE,** the Plaintiff seeks the following relief:

A. That the court certify the Letter Class, with the class definition given above or as amended, appoint the Plaintiff as Class representative and appoint his counsel as Class counsel;

B. That the court award statutory damages pursuant to 15 U.S.C. § 1692k(2);

C. That the court award of costs, including reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(3);

D. Such other and further relief the nature of the Plaintiff's cause may require.

**COUNT II –Maryland Consumer Debt Collection Act, Md. Code Ann. ("MCDCA"), Com. L. § 14-201 et Seq. (All Defendants, All Classes)**

70. Plaintiff repeats the foregoing allegations as though fully set forth here.

71. Defendants HWI, CRC and DVA are each a "collector" within the meaning of Md. Code Ann., Com. L. § 14-201(b) because they were attempting to collect an alleged debt arising from a consumer transaction, namely, money alleged to be owed on a residential lease.

72. Defendants violated Md. Code Ann., Com. L. § 14-202(8) by claiming, attempting or threatening to enforce a right with knowledge or reckless disregard that the right did not exist, namely the right to collect interest at a rate greater than the legal rate.

73. Defendants violated Md. Code Ann., Com. L. § 14-202(8) by claiming, attempting or threatening to enforce a right with knowledge or reckless disregard that the right did not exist, namely claiming the right to collect rent at an increased rate to which the tenant had not affirmatively assented.

74. Defendant violated Md. Code Ann., Com. L. § 14-202(11) by engaging in conduct that violated the Fair Debt Collection Practices Act, including:

75. Misrepresenting the amount of an alleged debt.

76. Seeking to collect interest not permitted by law.

    **WHEREFORE,** the Plaintiff seeks the following relief:

    A.  That the court certify the Letter Class, with the class definition given above or as amended, appoint the Plaintiff as Class representative and appoint his counsel as Class counsel;

    B.  That the court award damages in excess of $75,000.00 to be determined by a jury.

## COUNT III – Maryland Consumer Protection Act, Md. Code Ann., Com. L. § 13-101 et Seq. (All Defendants, All Classes)

77. Plaintiff repeats the foregoing allegations as though fully set forth here.

78. The Plaintiff is a "consumer" as defined by § 13-101(c)(1) of the MCPA, and the alleged debt is a "consumer debt" as defined by § 13-101(d)(1).

79. Each of the parties to this action is a "person" as defined by § 13-101(h) of the MCPA.

80. In enacting the Consumer Protection Act, the Legislature made the following Legislative Findings:

> (a)(1) The General Assembly of Maryland finds that consumer protection is one of the major issues which confront all levels of government, and that there has been mounting concern over the increase of deceptive practices in connection with sales of merchandise, real property, and services and the extension of credit.
>
> (2) The General Assembly recognizes that there are federal and State laws which offer protection in these areas, especially insofar as consumer credit practices are concerned, but it finds that existing laws are inadequate, poorly coordinated and not widely known or adequately enforced.
>
> *        *        *
>
> (b)(2) The General Assembly is concerned that public confidence in merchants offering goods, services, realty, and credit is being undermined, although the majority of business people operate with integrity and sincere regard for the consumer.
>
> (3) The General Assembly concludes, therefore, that it should take strong protective and preventive steps to investigate unlawful consumer practices, to assist the public in obtaining relief from these practices, and to prevent these practices from occurring in Maryland. It is the purpose of this title to accomplish these ends and thereby maintain the health and welfare of the citizens of the State.

Md. Code Ann., Com. Law § 13-102.

81. In enacting the MCPA, the Legislature expressed its explicit intent as follows:

"[t]his title is intended to provide minimum standards for the protection of consumers in the State." Md. Code Ann., Com. Law § 13-103(a).[7]

---

[7] "The 1986 amendment of the Act to include a private cause of action was designed 'to improve the enforcement' of the Act for the benefit of those consumers. *See* Report of Senate Judicial Proceedings Committee concerning Senate Bill 551 (March 7, 1986)." *Frazier v. Castle Ford, Ltd.*, 430 Md. 144, 167, 59 A.3d 1016, 1029 (2013).

82. The Legislature also said that the MCPA "shall be construed and applied liberally to promote its purpose." Md. Code Ann., Com. Law § 13-105. "The CPA is to be liberally construed and applied. . . and is intended to protect consumers by the establishment of minimum standards." *State v. Cottman Transmissions Sys., Inc.*, 86 Md. App. 714, 743 (1991).

83. Md. Code Ann., Com. L. § 13-303(1) prohibits unfair, abusive or deceptive practices as defined by § 13-301, in the sale lease or rental of consumer goods, services or realty.

84. Md. Code Ann., Com. L. § 13-303(5) prohibits unfair, abusive or deceptive practices as defined by § 13-301, in the collection of consumer debts.

85. Defendants violated Md. Code Ann., Com. L. § 13-301(14)(iii) by violating the MCDCA as aforesaid.

86. Defendants violated Md. Code Ann., Com. L. § 13-301(1) by using false or misleading oral or written statements to collect a debt.

87. Defendants CRC and DVA violated Md. Code Ann., Com. L. § 13-301 by using an unfair practice in the leasing of consumer realty.

88. A practice is unfair under the MCPA if it results in (a) a substantial injury (b) not outweighed by any countervailing benefit of the practice and (c) not reasonably avoidable by the consumer. *Legg v. Casstruccio,* 100 Md. App. 748 (1994)(adopting FTC standards for unfairness). That the practice is a violation of public policy provides additional evidence of the degree of consumer injury. *Id.* at 769.

89. CRC and DVA have a practice of including an automatic renewal clause in their residential leases substantially in the form set out above. The clause includes both

a standard automatic renewal provision ("renewal provision") *and* a provision for the automatic entry of the tenant into a new lease on different terms ("new terms provision"). The new terms provision is triggered when the landlord gives notice of intent to terminate the lease, and at the same time offers the tenant a new lease on different terms. The new terms provision treats 14 days of silence by the tenant as acceptance of the new lease, whatever the terms may be.

90. The use of the new terms provision causes substantial injury, by binding tenants to high-cost, short term renewals, on short notice.

91. A lease renewal clause is required by statute to be "distinctly set apart" from any other provision and be separately acknowledged by the tenant. Md. Code Ann., Real Prop. § 8-208(e)(1). If a renewal clause does not comply with these requirements, it is unenforceable. Md. Code Ann., Real Prop. § 8-208(e)(2) & (g)(1). The merging of the renewal provision and the new terms provision is thus contrary to public policy.

92. Further, the new terms provision is contrary to Md. Code Ann., Real Prop. § 5-101 which provides that any interest in land created other than "in writing and signed by the party creating it" is a mere interest at will. The new terms provision purports to create a more durable lease that is not terminable at will, but requires 60 days notice to terminate.

93. The public policy of Maryland is against silent acceptance in consumer transactions. See e.g., Md. Code Ann., Com. L. § 14-1304 (sales of merchandise by sending unsolicited goods constitute unconditional gifts to recipient).

94. The practice of including the new terms provision is detrimental to consumers because it allows CRC and DVA to offer them leases on radically altered terms,

particularly with increased rates of rent, with very little time available for the tenant to object to the lease. Tenants are put in the position of having to decide whether to move out (with all the financial and logistical burdens that imposes), or accept new terms, within a 14-day window.

95. Defendants' practice has no countervailing benefit to the public: tenants gain nothing from silent acceptance of a new lease, and the provision serves only to further empower the landlord at the expense of the tenant.

96. Plaintiff could not reasonably avoid this practice: the clause was a standard clause in a standard lease and was not up for negotiation. Plaintiff notified CRC at the outset of the lease that he did not wish to renew the lease at the end of its term, but was ignored.

97. Defendant violated Md. Code Ann., Com. L. § 13-301 by using an abusive practice to collect a debt.

98. The Merriam-Webster dictionary defines "abuse" as "1. a corrupt practice or custom . . . 2. Improper or excessive use or treatment."

99. The use of the new terms provision is an abusive practice, because it is improper and excessive.

100.    Plaintiff was damaged as aforesaid.

**Wherefore,** Plaintiff asks for the following relief:

A.  That the court certify the Letter Class, with the class definition given above or as amended, appoint the Plaintiff as Class representative and appoint his counsel as Class counsel;

B.  An award of actual damages to be assessed by the jury in excess of $75,000.00;

C. An award of reasonable attorneys fees and costs;

D. Such other and further relief as Plaintiff's cause may require.

**COUNT IV – Real Prop. § 8-208(g) (CRC and DVA Only)(Class)**

101.     Plaintiff repeats the foregoing allegations as though fully set forth here.

102.     Defendants CRC and DVA are each and together a landlord within the meaning of § 8-208.

103.     Plaintiff's lease was a residential lease.

104.     The renewal provision of the lease was not "distinctly set apart from any other provision of the lease." Because it was accompanied by and incorporated with the new terms provision.

105.     The renewal provision of the lease was unenforceable because it was not specifically accompanied by the tenant's initials or signature, but was combined with the new terms provision.

106.     The lease addendum containing the renewal provision and the new terms provision was thus prohibited by § 8-208 and therefore unenforceable under § 8-208(g).

107.     Defendants CRC and DVA sought to enforce the lease addendum in violation of § 8-208(g)(2).

108.     Plaintiff was damaged as aforesaid.

**Wherefore,** Plaintiff asks for the following relief:

A. That the court certify the Letter Class, with the class definition given above or as amended, appoint the Plaintiff as Class representative and appoint his counsel as Class counsel;

B. An award of actual damages to be assessed by the jury in excess of

$75,000.00;

C.  An award of reasonable attorneys fees and costs;

D.  Such other and further relief as Plaintiff's cause may require.

**Notice of Claim for Attorneys Fees Allowed By Law**

(All Defendants)

109.     Pursuant to Rule 2-703(b) the Plaintiff includes this separately numbered claim for attorney's fees in this initial pleading.   Further, pursuant to Rule 2-703(d), the Plaintiff advises the court and the Defendants that he believes that this case is likely to result in a substantial claim for attorneys' fees for services over a significant period.

## <u>JURY DEMAND</u>

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: November 4, 2022

By: _/s/ Emanwel J. Turnbull_____
Emanwel J. Turnbull
CPF# 1606210269
THE HOLLAND LAW FIRM, P.C.
914 Bay Ridge Rd, Ste 230
Annapolis, MD 21403
Telephone: (410) 280-6133
Facsimile: (410) 280-8650
eturnbull@hollandlawfirm.com

Peter A. Holland
CPF# 9212160067
THE HOLLAND LAW FIRM, P.C.
914 Bay Ridge Rd. Ste 230

Annapolis, MD 21403
Telephone: (410) 280-6133
Facsimile: (410) 280-8650
peter@hollandlawfirm.com

*Counsel for Plaintiff*