**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| YURY SHADRIN, individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>HUNTER WARFIELD, INC.<br><br>Defendant. | Case No.: 1:22-cv-03228-EA |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT**

Plaintiff YURY SHADRIN, through undersigned counsel, submits this Memorandum of Law in support his motion for Final Approval of Settlement, Appointment of Class Counsel and Class Representatives, Certification for Settlement, and Dismissal of Lawsuit with Prejudice.

Plaintiff incorporates by reference the Memorandum and Exhibits previously submitted in support of the preliminary approval of the Settlement and the Motion of Amend Preliminary Approval Order. ECF 49 and 52.

The Court preliminarily approved the Settlement by its Order dated July 26, 2024. ECF 51. Defendant then discovered the existence of additional class members, necessitating an amendment of the settlement agreement and preliminary approval order. See ECF 52. The court approved the amendment on September 9, 2024. ECF 53. Notice of the Settlement has been provided by mail, and class members have been given an opportunity to opt out or object.  The class administrator sent Notice to all 2,317 class members.  The percentage of Notices deemed delivered is 87.14%.  There were no class

members who opted out, and there were no objections. See Administrator's Report and Declaration, Exh. 1.

A final hearing is set for January 13, 2025. Plaintiff requests that the Court enter the proposed Final Order and Judgment for the reasons set forth herein.

### I. INTRODUCTION

If granted Final Approval, this Settlement will accomplish the following:

- Pay approximately $27 to each of the 2,316 class members
- Pay all costs of class administration.
- Pay an incentive award to the named Plaintiff of $5,000.00.
- Pay attorneys fees of $60,070.23.

Plaintiff filed this action individually and on behalf of others similarly situated pursuant to Rule 23. The Plaintiff alleged on behalf of the Class that Defendants violated the Fair Debt Collection Practices Act, the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act.

Ultimately, through their counsel, after motions practice and the resolution of individual claims against other co-defendants, the parties reached an arms-length negotiated settlement.

The Settlement Class for which final approval is sought is defined as:

> All individuals to whom HWI sent a letter seeking interest in excess of 6% per annum simple interest on a residential rental-related debt arising from a lease of property in Maryland on or after November 7, 2019.

> Excluded from the class are (1) employees and officers of the Court in which the action is pending or Defendant, and (2) persons who filed a bankruptcy after the event that made them a class member and who received a discharge.

The Claims to be handled on a class basis are:

> all causes of action, suits, claims and demands, in law or in equity, for damages, statutory damages, expenses, costs, and counsel fees arising out of the practices alleged in the Complaint.

The Class meets the Rule 23 requirements of numerosity, commonality, typicality and adequacy. In addition, the common issues (whether Defendant's attempt to collect interest on Maryland residential debts at a rate greater than 6% violated the law) predominate and a class action is superior to other methods of adjudication.

## II.  FACTUAL BACKGROUND

Defendant HWI is a debt collector specializing in residential landlord-tenant debt. It operates in many states including Maryland, where it holds a Consumer Collection Agency license. It sent letters to Plaintiff and many other Marylanders stating that they owed interest on residential landlord-tenant debts at rates greater than 6%. Maryland law provides that the legal rate of interest absent any enactment to the contrary is 6%. Even the rate of post-judgment interest on a residential landlord-tenant debt in Maryland is 6% (as opposed to the 10% allowed for almost all civil debts). No statute specifically authorizes a different rate of interest between landlords and tenants.

Plaintiff brought this case in part to challenge HWI's practice of seeking interest in excess of the legal rate.[1]

As part of the process to settle this case, Class Counsel conducted formal and informal investigation and research into the applicable law with respect to the claims, defenses, and class certification issues.  Class Counsel also reviewed documentation relevant to the issues raised in the Complaint and reviewed information provided by the

---

[1] Plaintiff also sued other parties and on other theories, relating to the automatic renewal of leases, however, those issues proved not to be amenable to class treatment due to a lack of numerosity, leading to individual settlements with the other defendants, and narrowing the issues in the case to the interest issue.

Defendant. In analyzing and prosecuting this lawsuit Class Counsel also relied on their expertise developed in their prior experience litigating similar cases based on the same laws at issue in this case.

### III. BENEFITS OF THE SETTLEMENT TO CLASS MEMBERS

The class members will receive an estimated $27 each, automatically, with no claim form. All the costs of settlement and appropriate incentive and fee awards will be made out of the common fund, and any residue will go to an appropriate cy pres recipient.

### IV. THE CLASS MEETS THE REQUIREMENTS FOR A CLASS ACTION

#### A. Factors To Be Considered In Certifying A Class Action

Rule 23 imposes four prerequisites for a class action: (1) the class is so numerous that joinder of all embers is impracticable ("numerosity"); (2) there are questions of fact or law common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition, the requirements of one of the three subsections of Rule 23(b) must be satisfied.

Plaintiff here seeks final approval of the Settlement Class pursuant to Rule 23(b)(3) where the Plaintiff must demonstrate that (1) the common questions of fact or law predominate over questions affecting only individual members ("predominance") and (2) that a class action is superior to individual actions for the fair and efficient handling of the claim ("superiority").

The relevant factors in determining superiority include:

(1) The interest of the individual members in controlling the prosecution or defense

of their case;

(2) the extent and nature of other litigation already commenced involving the parties;

(3) the desirability of concentrating the claims in a particular forum; (4) the difficulties likely to be encountered in the management of the case.

> i. *Numerosity*

The numerosity prerequisite is satisfied if it is reasonable to conclude that the number of members of the proposed class is greater than the minimum number required for class certification, which is about 18-40. *Cypress v. Newport News General & Nonsectarian Hospital Ass'n.*, 375 F.2d 648, 653 (4th Cir.1967) (18 sufficient); *Swanson v. American Consumer Industries*, 415 F.2d 1326 (7th Cir.1969)(40 sufficient).

The proposed Class in the instant case satisfies the numerosity requirement because there are 2,316 class members.

> ii. *Commonality*

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

*Gen Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 (1982)(considering equivalent federal rule).

Because the requirement may be satisfied by a single common issue, it is "'easily met in most cases.' See W. Rubenstein, 1 NEWBERG & RUBENSTEIN ON CLASS

ACTIONS § 3.20, at 3-50 (1992)." *Stastny v. Southern Bell Tel. and Tel. Co.* 628 F.3d 267, 274, FN 10 (4th Cir. 1980).

In this case there are common issues: whether Defendant's collection letters included false or misleading statements about the Class member's obligation to pay interest on their alleged landlord-tenant debts.

### iii. Typicality

Plaintiff's claims are typical of the class members. Each class member was sent a letter or subject to a lien containing language that Plaintiff alleges was misleading. The class claims arise from that fact and in that respect, Plaintiff is no different than the other class members.

### iv. Adequacy of Representation - Plaintiff

In the present case, Plaintiff has devoted all the time necessary to litigate this case. Plaintiff initiated contact with counsel to address the violation of Plaintiff's rights and has remained actively involved through the litigation. Plaintiff has no interests antagonistic to the Class.

### v. Adequacy of Representation - Counsel

The Maryland rules provide no special standard for the appointment of class counsel except that they must be adequate. The equivalent federal rule, Fed. R. Civ. P. 23(g), provides:

> (1) *Appointing Class Counsel.* Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:
>
> (A) must consider:
>
> (i) the work counsel has done in identifying or investigating potential claims in the action;

> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class;
>
> (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

Consideration of each of these factors supports the appointment of Plaintiffs' counsel as Class Counsel in this matter. Plaintiff's counsel has conducted discovery, obtained material relevant to settlement, negotiated a settlement at arms length, negotiated a modification of that settlement in light of newly discovered class members that maintained the same level of relief for all class members, and done all work necessary to consummate the settlement. Plaintiffs' counsel have spoken to class members who called in with questions.

Plaintiffs' counsel are experienced in both consumer rights law and class action work. Plaintiffs' counsel have been appointed in other class actions, and have represented consumers in state and federal court on consumer law issues.

Plaintiffs' counsel have committed the resources necessary to bring this case to a conclusion.

    B. <u>Rule 23(b)(3) Factors</u>

      i. *Predominance*

The common questions of law and fact within the Class predominate over any individual questions. The Class members were all sent substantially the same letters and subject to liens with the same language. The questions about whether the language of

those letters and liens violates the law are therefore predominant. The common questions are resolved in this Settlement by a compromise between the parties. Plaintiff submits that there are no individual questions within the Class.

  ii. *Superiority*

This action meets the superiority requirement also. Plaintiff is aware of no other lawsuit concerning these claims. There have been no objections to the settlement and no opt-outs

  **V. THE SETTLEMENT IS FAIR AND ADEQUATE**

Once it has been determined that the Class should be certified, the Court must additionally evaluate the proposed class settlement for purposes of Final Approval. The settlement must be fair and adequate to receive approval.

Rule 23 provides the following factors for consideration:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Each of these factors weighs in favor of the proposed

settlement.

    1. *Adequate representation*

The class was adequately represented in negotiations by a representative plaintiff with claims similar to those of the class, and by counsel experienced in the legal subject matter and in class action work.

    2. *The settlement was negotiated at arm's length.*

There is no collusion between the parties. The settlement was reached through arm's length negotiations between experienced counsel. Plaintiff is represented by experienced class action counsel. The Defendants are represented by a well-respected defense counsel, experienced in cases of this type.

    3. *The relief provided is adequate.*

The relief provided to class members is adequate, taking into account the claims and circumstances of the case. This case is primarily about the overstatement of interest owed in debt collection letters. Each class member will receive an award of about $27 without having to make any proof that they were adversely affected by that violation (whereas, proof would be required for anything more than a recovery of statutory damages). Statutory damages are available only under the Fair Debt Collection Practices Act, and would be subject to a $ $100,000.00 or 1% of net worth cap and a 1 year statute of limitations.

$27 per class member is significantly higher than other settlements in cases alleging similar types of violation concerning misleading debt collection letters. See e.g., *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673 (N.D. Ca. 2016)(approving $14.63 per class member); *Passafiume v. NRA Group, LLC*, 274 F.R.D. 424 (E.D. N.Y. 2010)(approving $2.87 per class member, with a claim form); *Beneli v. BCA Fin. Servs.*

*Inc.*, 324 F.R.D. 89 (D. N.J. 2018)($3.82 per class member in 2,612 member class). The relief is also significantly larger than that recently awarded in Maryland state court. *Almendra v. Neall*, Case No. C-02-CV-22-000454 (Cir. Ct. Anne Arundel Co. July 7, 2023)(approving award of approximately $16). The relief in this case is essentially small individual relief, for small individual wrongs. In that light, the relief is adequate, and indeed better than the relief usual in such cases. In light of the risks and the potential recovery of damages in this case, the relief provided is appropriate.

    *4. The settlement treats class members equitably relative to each other.*

All class members are treated the same under the settlement.

## VI.    CLASS COUNSEL SHOULD BE AWARDED ATTORNEYS FEES OF %40 ($60,070.23)

Class Counsel seek an award of a contingency fee of $60,070.23 from the common fund.

It is well established that a contingency arrangement is important to promoting access to lawyers and to the courts. In the case of *In re Abrams & Abrams, P.A.*, 605 F.3d 238 (4th Cir. 2010), the Fourth Circuit reversed a District Court's award of lodestar (which was lower) instead of contingency attorney's fees. The Fourth Circuit observed that:

> The district court here neglected to consider several critically important factors in its analysis. For example, it failed to adequately address the contingency of the fee (factor 6), the award involved and the results obtained (factor 8), and the fee awards made in similar cases (factor 12)."

605 F.3d at 245. The Fourth Circuit went on to state that "[t]he court obviously knew that a contingency fee was involved, but it did not give that fact the weight it was due in the

decisional calculus" and "[f]ixing a lodestar fee in this contingency case was error and threatens to nullify the considerable advantages of contingency arrangements." *Id*. A contingency fee, by its very nature helps "secure for the impecunious access both to counsel and to court." *Id.*

A contingency fee from the common fund sought is also supported in the class action context by U.S. Supreme Court decisions such as *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745, (1980), which held that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." 444 U.S. 472 at 478, 100 S.Ct. at 749. The rationale for this approach is to avoid unjust enrichment of the class members for the work done that benefited them.

In class action contingency awards, courts have considered seven factors:

> (1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and (7) public policy.

*Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 682 (D. Md. 2013) Those factors favor the award sought here: "the most critical factor in calculating a reasonable fee award is the degree of success obtained." *McKnight v. Circuit City Stores, Inc.*, 14 Fed.Appx. 147, 149 (4th Cir.2001). Here, Class Counsel have obtained substantial recovery for the class, significantly higher than the relief obtained in other similar class cases. Further, out of more than 2,316 class members, none chose to opt out, and none filed an objection. Class members who felt that the relief was not sufficient could easily have chosen to exclude themselves from the class. That so few did suggests that the class

members are satisfied with the relief obtained.

Further, "[i]n determining the reasonableness of an attorneys' fee award, courts consider the relative risk involved in litigating the specific matter compared to the general risks incurred by attorneys taking on class actions on a contingency basis." *Singleton*, 976 F. Supp. 2d at 683. Further, "[t]he risk undertaken by class counsel is evaluated by, among other things, ... the ease of proving claims and damages, and, if the case resulted in settlement, the relative speed at which the case was settled." *Singleton*, 976 F. Supp. 2d at 683.

Here, there was no binding precedent on the key legal question (the maximum rate of interest on residential landlord-tenant debts) and Plaintiff theory was challenged, and successfully defended, at the Motion to Dismiss stage. The same issue could easily have been the subject of many years of delay through further motions practice and appeals. Further, there were substantial questions about what recovery the class would have received, in light of the cap on statutory damages under the FDCPA and the difficulty of proving damages for these violations under state law. Due to the experience and diligence of Class Counsel, the case was settled on these favorable terms and significantly more quickly than if the case had been pressed to trial.

### C. Lack of Objections

"The lack of objections tends to show that at least from the class members' perspective, the requested fee is reasonable for the services provided and the benefits achieved by class counsel." *Singleton*, 976 F. Supp. 2d at 684 (D. Md. 2013). No class members objected to the settlement, a further indication that the class members are satisfied with the settlement and with the proposed fee award, which was included in the notice to the class.

D.  Awards In Similar Cases

The contingency fee sought here is consistent with the contingency fees allowed in numerous other consumer protection cases before this Court and Maryland state courts. See e.g., *Williams v. eWrit Filings, LLC,* Case No. C-02-CV-20-001655 (Anne Arundel Cir. Ct.)(45%); *Cole v. Tidewater Fin. Co.*, Case No. 24-C-12-002463, (Baltimore City Cir. Ct. 2012)(40%); *Rand v. Main Street Acquisition Corp.*, Case No. 24-C-13-004864 (Baltimore City Cir. Ct. 2012) (40%); and *Turner v. Asset Acquisition Group, LLC*, Case No. 24-C-13-004861 (Baltimore City Cir. Ct. 2012) (40%); *Castillo v. Nagle & Zaller*, Case No. 12-02338–WDQ (40%); *Gardner v. MCTFCU*, Case No. 10-02781-BPG (40%); *Bradshaw v. Hilco Receivables, LLC.*, 10-0113- RDB, (D. Md.)(40%); *Veiga, et al., v. Suntrust Bank*, 09-2815-PGW, (D. Md.) (40%); *Baker v. Sunshine Financial Group, LLC.*, 11-02028-PWG (D. Md.)( 40%); *Tyeryar v. Main St. Acquisition Corp.*, 11-00250-CCB (D. Md.)(40%).

**VII. PLAINTIFF SHOULD BE AWARDED $5,000 AS AN INCENTIVE AWARD**

> Incentive awards are 'intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.'

*Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015) quoting *Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 958-59 (9th Cir. 2009). Incentive awards may raise concerns "when incentive agreements are entered into at the onset of litigation . . . particularly when they are conditioned on class representative support for a settlement." *Id.* However, that is not the case where they "were not negotiated until after the substantive terms of the [settlement] had been established" and "the class members were afforded substantial

relief." *Berry,* 807 F.3d at 614.

Here, the incentive award was not negotiated *ex ante* and was not dependent on the class representative's approval of the settlement.

The requested award is well within the range of awards typically made in Maryland. *Berry,* 807 F.3d at 613 (4th Cir. 2015)(upholding award of $5,000); *Miller v. Prestige Financial*, Case No. 09-1671-BEL, ECF 36 (awarding $6,000 incentive award to each of 2 representative plaintiffs); *Hauk v. LVNV Funding, LLC.*, CCB-09-003238 (awarding $4,000 in incentive payments to plaintiffs); *Muga v. BB & T*, WDQ-10-00890 (awarding a $7,500 incentive payment); *Castillo v. Nagle & Zaller, P.C.*, WDQ-12-002338 (awarding $3,500 incentive payment); *Yost v. Elon Property Management Company,* 2023 WL 185178 at * 10 (D. Md. Jan. 13, 2023)(awarding $5,000.00 incentive payment); *Curry v. Money One Federal Credit Union,* 2021 WL 5839432 at * 4 (D. Md. Dec. 9, 2021)(awarding $6,000.00 incentive payment); *Smith v. Toyota Motor Credit Corp.,* 2014 WL 4953751 (D. Md. Oct. 2, 2014)(awarding $5,000 incentive payments to each plaintiff). Therefore, it is respectfully requested that the incentive payment be approved.

## VIII.   UNCLAIMED FUNDS SHOULD BE APPLIED CY PRES

Courts commonly approve *cy pres* distributions for unclaimed funds, such as the residue of a class settlement fund. *Curry v. Money One Fed. Credit Union*, No. CV DKC 19-3467, 2021 WL 5839432, at *3 (D. Md. Dec. 9, 2021). The distribution is designed to put the funds "to their next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class." *Klier v. Elf Atochem*, 658 F.3d 468, 474 (5th Cir. 2011).

The Settlement Agreement provides for any unclaimed funds be applied *cy pres* and not revert to the Defendant. The proposed cy pres recipient is Civil Justice, Inc. It is an appropriate *cy pres* recipient because it provides service to consumers in financial

difficulty through its Economic Justice Program. Since 2014, the program has saved Maryland consumers over $1.3 million in alleged debts and recovered $2.9 million for consumers.

## IX.   CONCLUSION

The Court should enter the Proposed Final Order and Judgment which includes the following: (1) final approval and certification of the Settlement Class, with the Named Plaintiffs as class representatives and their counsel as Class Counsel; (2) final approval of the Settlement Agreement; (3) payment of incentive fees to the Named Plaintiff; (4) payment of attorneys' fees and costs to Class Counsel; (5) payment of any residue to the *cy pres* recipient(s) and (6) dismissal of the Released Claims with prejudice as provided for in the Settlement Agreement.

Respectfully submitted,

Dated: December 23, 2024

By:   /s/ Emanwel J. Turnbull
      Emanwel J. Turnbull
      Fed. Bar No. 19674
      THE HOLLAND LAW FIRM, P.C.
      914 Bay Ridge Rd, Ste 230
      Annapolis, MD 21401
      Telephone: (410) 280-6133
      Facsimile: (410) 280-8650
      eturnbull@hollandlawfirm.com

      Peter A. Holland
      Fed. Bar No. 10866
      THE HOLLAND LAW FIRM, P.C.
      914 Bay Ridge Rd. Ste 230
      Annapolis, MD 21401
      Telephone: (410) 280-6133
      Facsimile: (410) 280-8650
      peter@hollandlawfirm.com

*Counsel for Plaintiff & The Class*